UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA J. CANFIELD,

        Plaintiff,

v.

ROBERT MEYER, JR. and FOUR
SEASONS FORD LINCOLN MERCURY
OF CADILLAC, INC.,

        Defendants.
_____/

Case No. 1:12-cv-162

HON. JANET T. NEFF

## **OPINION**

        Plaintiff Barbara J. Canfield filed this sex discrimination/hostile work environment action against Robert Meyer, Jr. and Four Seasons Ford Lincoln Mercury of Cadillac, Inc. ("Four Seasons"), stemming from her former employment and business relationship with Defendants. Pending before the Court is Defendants' Motion for Summary Judgment (Dkt 96). Plaintiff has filed a Response (Dkt 97), and Defendants have filed a Reply (Dkt 98). Having fully considered the parties' submissions, the Court concludes that oral argument would not assist in the disposition of the issues presented. *See* W.D. Mich. LCivR 7.2(d) (the Court has discretion to schedule oral argument or dispose of a dispositive motion without argument at the end of briefing). For the reasons that follow, Defendants' motion is granted in part and denied in part. The motion is granted with respect to Plaintiff's Title VII claims against Defendant Meyer individually; the motion is denied with respect to Plaintiff's remaining claims.

I.  Factual Background[1]

This case has a lengthy and extensive background, set forth in the First Amended Complaint (FAC) (Dkt 36), and the complaint in the related state court actions in Wexford County Circuit Court (Defs. Brf., Dkt 96, Ex. 16).  The litigation between the parties stems from joint business dealings surrounding two car dealerships in Cadillac, Michigan, and specifically, Plaintiff's stock ownership in Defendant Four Seasons and her former employment as the manager.  In short, Plaintiff's relationship with Defendant Meyer became acrimonious, their business relationship went sour, and Plaintiff contends she was squeezed out of the business while Meyer and his cohorts allegedly conspired to drain its finances and deplete the value of Plaintiff's stock holdings.  Defendants, however, contend that the Four Seasons dealership suffered under Plaintiff's leadership and her removal as the manager was a fundamental business and financial decision.

Until December 2010, Four Seasons owned and operated a Ford dealership in Cadillac, Michigan.  Meyer is Four Seasons' 78 % majority shareholder, an officer of the Company, and a member of its board of directors.  Meyer is/was also the majority shareholder of two other car dealerships in Northern Michigan, Gateway Chrysler Dodge Jeep, Inc. ("Gateway") and Cadillac Motors Enterprises, Inc. ("Cadillac Motors"), which operated as a Toyota dealership ("Swaffer's Toyota of Cadillac").  Plaintiff is the 22 % minority shareholder of Defendant Four Seasons, and until her termination in April 2010, she was its president and a member of its board of directors.  She was also Four Season's Dealer Principal and General Manager, dating back to 2002, but she reported to Meyer as her superior.

---

[1]The facts in this case are largely disputed.  These underlying facts are presented for purposes of the summary judgment motion and are not intended as a resolution of any matters in dispute.

According to Plaintiff, in 2001, Meyer approached her to become involved in Four Seasons, telling her that having a woman as a dealer principal would be beneficial in dealings with Ford and "we need to use the woman thing" with Ford (Pl. Aff., Dkt 97-2 ¶¶ 1-2).[2] At the time, Plaintiff had more than 15 years of experience in automotive sales and automotive dealership management and a reputation as a successful and respected dealer and businesswoman (*id.* ¶ 3).

In and around 2004, Meyer began exploring the purchase of another automobile dealership, Cadillac Motors. As with Four Seasons, Meyer wanted to "use the woman thing" to obtain Toyota's approval, and he listed Rosalyn Swaffer as the Dealer Principal even though Rosalyn's husband, Kris Swaffer, operated and managed this dealership (FAC ¶ 22). The Swaffers are named defendants in Plaintiff's state court action, and alleged cohorts of Meyer.

Plaintiff states that her problems with Meyer began in late 2004/early 2005, when Meyer began negotiations to acquire a building to house both Four Seasons (run by Plaintiff) and Cadillac Motors (run by Kris Swaffer) (FAC ¶¶ 23-24; Pl. Aff. ¶ 9). Meyer needed the agreement of Ford and Toyota, and as Dealer Principal, Plaintiff was responsible for obtaining Ford's approval (FAC ¶ 23; Pl. Aff. ¶ 10). When Ford refused approval, Meyer's anti-female animus began to permeate Plaintiff's working environment:

> For example, when Ford's initial response to combining the two dealerships on one property was "absolutely not," Meyer remarked that "I should have known better than to send a woman to do a man's job." Defendant Meyer then told Ms. Canfield that her husband, Howard Canfield, an experienced salesman at Four Seasons, needed to be involved in the discussions with Ford because "men do not appreciate having to deal with women."

(FAC ¶ 24; Pl. Aff. ¶¶ 12-13).

---

[2]Plaintiff provides her affidavit, which mirrors the key allegations in her FAC.

Plaintiff asserts numerous specific instances of what she terms "a painful and tumultuous four-plus years of severe and pervasive gender-based contempt by Defendant Meyer directed toward [Plaintiff] and other female employees at Four Seasons" (FAC ¶ 26). She asserts that from mid-2005 to March 2010, Meyer made countless degrading, disparaging and sexist comments about Plaintiff, other female employees and women in general, and he otherwise engaged in conduct that demonstrated clear anti-female animus, such as routinely calling her a bitch and cunt and using vulgar language to disparage her work performance; telling her she was overpaid as a woman, that women should never have been given the right to vote, she was just "hormonal" and that "women tend to be paranoid during certain times of the month"; asking whether she was "PMS'ing" or "bleeding"; stating that "women have no credibility" and should not be used at the dealership to sell or explain vehicle service issues; telling her she needed to "quit bleeding" and "grow some balls" if she wanted to be part of the "big boy world" (*id.* ¶¶ 27, 27(a)-(x); Pl. Aff., Dkt 97-2).[3]

Plaintiff states that by the middle of 2009, Meyer's conduct escalated to outright intimidation and physically threatening conduct toward Plaintiff, including threats of bodily harm to her daughters (FAC ¶ 28; Pl. Aff. ¶ 31). Meyer told Plaintiff that he would do whatever it took for Kris Swaffer to be running Four Seasons instead of Plaintiff (Pl. Aff. ¶ 44).

In March of 2010, without any notice to Plaintiff, Meyer hired a man by the name of Tom Vanderhyde to apparently supervise Plaintiff's work (Pl. Aff. ¶ 46). Plaintiff left on a scheduled vacation on March 27 or 28, 2010 and when she returned on April 9, 2010, Vanderhyde was moved into her office and had taken control of the dealership (*id.* ¶¶ 46-48). On April 5, 2010, Meyer

---

[3]These specific remarks and incidents, too numerous to cite, are set forth in Plaintiff's Response, with record citations (*see* Dkt 97 at 6-10; Pl. Aff. ¶¶ 12-50).

called a meeting of the stockholders of Four Seasons, the purpose of which was to officially vote to remove Plaintiff as Dealer Principal and General Manager (*id.* ¶ 51). Meyer, as the controlling shareholder, cast the votes necessary to remove Plaintiff from her positions at Four Seasons (*id.* ¶ 52). Plaintiff states she was advised that her employment was terminated (*id.* ¶ 49), although Defendants dispute that Plaintiff was ever "terminated" (Defs. Brf. at 11-12).

Plaintiff obtained a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC) and filed this sex discrimination/hostile work environment action. Plaintiff previously filed a lawsuit against Meyer, Four Seasons, several related companies, and the Swaffers, in Wexford County Circuit Court. That case was consolidated with two other cases in Wexford Circuit Court and remains pending (*see* Dkt 17).

In December 2012, this Court denied Defendants' motion to abstain in favor of the parties' pending state court litigation (Or., Dkt 31). In January 2013, Plaintiff filed an amended complaint (FAC, Dkt 36), which added Plaintiff Howard Canfield, additional Defendants and general allegations, and thirteen counts duplicative of those in pending state court lawsuits. The Court declined to exercise supplemental jurisdiction over the added state law claims, and dismissed them without prejudice (Dkt 41).

The original four counts of the discrimination case remain before this Court:

COUNT I – Violation of Title VII, the Civil Rights Act, Sexual Discrimination

COUNT II – Violation of Elliot Larsen Civil Rights Act (ELCRA), Sexual Discrimination

COUNT III – Violation of Title VII Sexual Harassment/Hostile Work Environment

COUNT IV – Violation of Elliot Larsen Civil Rights Act, Sexual Harassment/Hostile Work Environment

(FAC, Dkt 36; Op. & Or., Dkt 41).

## II. Legal Standard

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer,* 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson,* 477 U.S. at 248). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess,* 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson,* 477 U.S. at 251-52).

## III. Analysis

Defendants move for summary judgment on four grounds: (1) this case may be subject to res judicata/claim preclusion if the Wexford County Circuit Court grants Defendants' pending motion for summary disposition in the concurrent state case; (2) the Title VII claims asserted against Defendant Meyer individually are improper as a matter of law; (3) the Title VII hostile work

6

environment claim is time-barred; and (4) the discrimination claims fail due to the overwhelming evidence supporting Defendants' nondiscriminatory, legitimate reason for removing Plaintiff as Dealer Principal of the dealership.

### A. Res Judicata/Claim Preclusion

Defendants argue that if Plaintiff's state case is dismissed, res judicata bars her claim in this federal case. Plaintiff contends that this argument is not ripe because there has been no judgment on the merits in the state case, and, furthermore, the argument has no merit. Defendants apparently concede in their Reply, that this argument is not yet ripe since Plaintiff's claims in the state court case are not yet fully resolved. The Court agrees that this argument is not ripe, and it provides no basis for summary judgment.

### B. Individual Title VII Claims against Meyer

#### 1.

Defendants argue that Meyer cannot be held individually liable for Plaintiff's Title VII claims because he does not qualify as an "employer" under Title VII and he cannot be held personally liable as an agent of Four Seasons, the "employer." Title VII provides that "[i]t shall be an unlawful employment practice for an employer" to discriminate "because of" an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A person aggrieved by such discrimination may bring a civil action against the "employer." 42 U.S.C. § 2000e-5(b), (f). "Employer" is defined to mean "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such person ...." 42 U.S.C. § 2000e(b). In *Wathen v. General Electric Company*, 115 F.3d 400, 405 (6th Cir. 1997), the Sixth Circuit held that "an

7

individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." (*See* Defs. Br., Dkt 96 at 22.)

Plaintiff does not disagree with the cited holding in *Wathen* (Pl. Resp., Dkt 97 at 19). Plaintiff argues, however, that Meyer is not individually liable as a supervisor, as in *Wathen*, but instead as an "employer," or more specifically, a "co-employer" of Plaintiff (*see id.* at 19-20, n.4). Plaintiff contends that whether Meyer qualifies as an "employer" is appropriately judged by the test for determining whether a shareholder-director qualifies as an "employee," as set forth in *Panepucci v. Honigman Miller Schwartz, Cohn, LLP*, 408 F. Supp. 2d 374 (E.D. Mich. 2005), *aff'd*, 281 F. App'x 482 (6th Cir. 2008). In *Panepucci*, the court acknowledged the six-factor "common-law agency" test set forth in *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444 (2003), with regard to determining whether the plaintiff-law-firm-partner was an employee or an employer. *Panepucci,* 408 F. Supp. 2d at 375-76. "[W]hether a shareholder-director is an employee depends on 'all of the incidents of the relationship ... with no one factor being decisive.'" *Id.* (citing *Clackamas*, 538 U.S. at 451) (citation and quotation marks omitted).[4]

As Defendants point out, however, *Panepucci* addressed whether a partner at a law firm could be deemed an "employee" for purposes of bringing a Title VII claim, and the case provides no direct support for Plaintiff's position that Meyer can be held individually liable as an "employer." Further, with respect to agency liability, the scope of the agent clause in Title VII extends only to respondeat superior liability, and thus it would not provide a basis for Meyer's individual liability except as imputed to Four Seasons. *See Wathen*, 115 F.3d at 405-06.

---

[4]The court declined to decide this issue on a motion to dismiss, and instead granted defendant's motion on the basis of an agreement to arbitrate all disputes the plaintiff had with the law firm. *Panepucci,* 408 F. Supp. 2d at 374, 376-77.

8

Plaintiff has provided no persuasive argument or authority for assessing individual liability against Meyer on a "co-employer" theory for her Title VII claims. Given the generally recognized principle that no individual liability lies for discrimination under Title VII, the Court concludes that the Title VII claims against Meyer individually are properly dismissed. *See Wathen*, 115 F.3d at 406 ("we find that the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of "employer" it selected for Title VII").

2.

In their Reply brief, Defendants argue for the first time that Plaintiff's claims must be dismissed in their entirety because she is an "owner," not an "employee" under the federal employment discrimination statutes, which protect "employees," and not for example, independent contractors or shareholders/owners. Defendants expressly acknowledge that "[t]he issue of whether Ms. Canfield qualifies as an 'employee' under Title VII and the ELCRA (she does not, as explained above) is different than whether Mr. Meyer qualifies as an 'employer' such that he can be held individually liable under Title VII" (Defs. Reply, Dkt 98 at 9). The Court declines to consider the merits of an argument raised for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("'Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'") (citation omitted).

It is well established that a reply brief is not the proper place to raise new arguments or facts. *See United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009); *Scottsdale*, 513 F.3d at 553. A reply

brief is a response to arguments made in the response brief. *Scottsdale,* 513 F.3d at 553. A non-moving party ordinarily has no right to respond to the reply brief and so as a matter of litigation fairness and procedure, such issues are considered waived. *Id.* This argument is waived. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held ... that arguments made ... for the first time in a reply brief are waived.").

C.  Hostile Work Environment Time-Bar

Defendants argue that Plaintiff's hostile work environment claim must be dismissed because it is time-barred. The parties do not dispute that Plaintiff had 300 days from the date of the alleged discriminatory act to file a charge with the EEOC. According to Plaintiff, she filed her Charge with the EEOC on January 18, 2011,[5] meaning that only events occurring after March 24, 2010 (300 days before January 18, 2011) fall within the Title VII limitations period.

For her claim to be timely, Plaintiff must establish an act contributing to the hostile environment that took place within the statutory time period. "[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Under the circumstances presented, the Court does not find Plaintiff's claim time-barred. At the core of Plaintiff's hostile work environment claim is her contention that Meyer's gender-

---

[5] Defendants state that Plaintiff filed her EEOC Charge on January 19, 2011, and thus only events occurring after March 25, 2010 are within the limitations period. The parties cite no documentary evidence to resolve this dispute. Regardless, the one-day difference is immaterial to the Court's disposition.

based harassment and degradation of her as a woman manager was continual and pervasive and created a hostile work environment. For instance, she alleges that Meyer had repeatedly claimed that "women have no credibility" at auto dealerships and men are better suited to represent the business; Meyer stated that he wanted a male in charge of the sales department because "customers would rather deal with a man" and "women are better at pushing paper" (Pl. Brf., Dkt 97 at 22). It is undisputed that while Plaintiff was on vacation in late March to around April 9, 2009, a male was hired to manage Four Seasons/oversee Plaintiff, an action that effectively ousted Plaintiff from her management role and installed a male figurehead at the dealership. Notably, replacing Plaintiff with a male manager coincides with the alleged previous threats/harassment to replace Plaintiff with a male, Kris Swaffer, to take over the front office responsibilities performed by Plaintiff. This action constitutes an act contributing to Plaintiff's hostile work environment claim that falls within the limitations period. Plaintiff's claim is not subject to dismissal as time-barred.

### D. Discrimination Claims – Pretext

Defendants argue that Plaintiff's discrimination claims fail because she cannot establish pretext under the three-step *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Defendants' argument disregards that the *McDonnell Douglas* burden-shifting analysis applies only in discrimination claims based on circumstantial evidence. Plaintiff's claims are based on direct evidence. Defendants' argument to the contrary obliterates any distinction between these types of evidence.

A plaintiff may establish a prima facie case of discrimination by direct evidence of discrimination or by circumstantial evidence that creates an inference of discrimination. *Wilson v. Cleveland Clinic Found.*, ___ F. App'x ___ No. 13–3258, 2014 WL 4397205, at \*6 (6th Cir. Sept.

8, 2014); *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 955 (6th Cir. 2014). "'[T]he direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both.'" *Scheick v. Tecumseh Pub. Schs.*, ___ F.3d ___; 2014 WL 4403175, at *4 (6th Cir. Sept. 2, 2014) (quoting *Kline v. TVA*, 128 F.3d 337, 348-49 (6th Cir.1997)). "'The *McDonnell Douglas* formula is inapplicable ... to cases in which the Title VII plaintiff presents credible, direct evidence of discriminatory animus.'" *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995) (citation omitted), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

"'[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'"[6] *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.,* 400 F.3d 466, 470 (6th Cir. 2005)); *see also Douglas v. Eaton Corp.*, No. 13–3537, 2014 WL 4099249, at *2 n.1 (6th Cir. Aug. 20, 2014). "'Such evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.'" *Shazor*, 744 F.3d at 955 (citation omitted). "Once a plaintiff produces direct evidence of discrimination, 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'" *Id.* (citation and quotation marks omitted).

---

[6]Circumstantial evidence is "'proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*)).

Here, as Plaintiff contends, she has presented substantial direct evidence of discriminatory animus. There is evidence that on numerous occasions, Meyer degraded her as a female manager, physically threatened her, and locked her office to hold her captive while berating her. This included direct comments that her job was better performed by a man, men did not like to deal with women, and customers do not want women as salespeople. There is also evidence of numerous other remarks and conduct reflecting Meyer's general discriminatory animus toward women, such as that Plaintiff should be more "ladylike" and his admitted comment to Plaintiff that the definition of a perfect woman was "a lady in public, Betty Crocker in the kitchen and a whore in bed" (*see* Defs. Ex. 6, Meyer Dep. at 551).

There is additional evidence that Meyer ignored and disregarded Plaintiff's presence in business meetings; made remarks about her being "hormonal," "PMS'ing" or "bleeding"; told her to "grow some balls" to be part of the "big boy world"; suggested she "wear a blouse that shows your tits" to gain a favorable outcome with a county building inspector; referred to Plaintiff as a "cunt" and leveled numerous other sex-based slurs at her. Discriminatory slurs by a decisionmaker constitute direct evidence of discrimination. *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 476 F. Supp. 2d 675, 686 (E.D. Mich. 2007). Defendants' argument that the alleged sexual comments lack temporal proximity with Plaintiff's termination is without merit. The anti-female remarks and conduct occurred in the work environment over several years and grew increasingly prevalent until Plaintiff was removed as Dealer Principal of Four Seasons. *See id.* at 688.

While Defendants dispute these facts, the evidence, viewed in a light most favorable to Plaintiff as required, provides ample basis showing direct evidence of discrimination. Moreover, as Plaintiff observes, "[e]ven one comment by a decision-maker can support a direct evidence case."

13

*Figgins*, 476 F. Supp. 2d at 686; *see also DiCarlo v. Potter*, 358 F.3d 408, 415-16 (6th Cir. 2004) *overruled on other grounds by Gross*, 557 U.S. at 180 (decision-maker's "dirty wops" remarks constituted direct evidence of discrimination).

Because Plaintiff presented direct evidence of discrimination, the burden shifts to Defendants to prove by a preponderance of the evidence that they would have made the same decision absent the impermissible motive. Given Plaintiff's showing of a prima facie case of discrimination by direct evidence, the Court need not analyze the parties' arguments concerning the three-step burden shifting approach from *McDonnell Douglas* for circumstantial evidence claims.

## IV. Conclusion

Defendants' Motion for Summary Judgment is granted in part and denied in part; summary judgment is granted in Defendants' favor as to Plaintiff's Title VII claims against Defendant Meyer individually; Defendants' motion is denied with respect to Plaintiff's remaining claims. An Order will be entered consistent with this Opinion.


Dated: September 18, 2014          /s/ Janet T. Neff
                                   JANET T. NEFF
                                   United States District Judge

14